# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# GALVESTON DIVISION

| | | |
|---|---|---|
| JIMMY D. SAVILLE<br>TDCJ # 01366096,<br><br>Plaintiff,<br><br>VS.<br><br>SERGEANT LARRY WINSTON, *et al.*,<br><br>Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. 3:17-0080 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jimmy D. Saville, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), filed a civil-rights complaint (Dkt. 1) under 42 U.S.C. § 1983. Plaintiff proceeds *pro se* and *in forma pauperis*. Defendant Larry Winston filed a motion for summary judgment (Dkt. 55) seeking dismissal of all claims against him. Plaintiff filed a response and a cross-motion for summary judgment (Dkt. 57). The motions are ripe for consideration. Having considered the parties' briefing, the applicable law, and all matters of record, the Court concludes that Defendant's summary-judgment motion should be **granted in part** and **denied in part** and that Plaintiff's motion should be **denied** for the reasons explained below. The Court will **stay** and **administratively close** this case while it locates *pro bono* counsel to represent Saville at trial.

## I.     BACKGROUND

Saville alleges that Sergeant Winston delayed his access to medical care when

Saville suffered a heart attack on June 15, 2016, at TDCJ's Darrington Unit. Winston previously moved for judgment on the pleadings, and the Court's opinion summarized Saville's allegations as follows:

> In his pleadings, Plaintiff alleges that he had severe chest pain on June 15, 2016, while at the "trusty camp" at the Darrington Unit (Dkt. 30, at 5-6). He states that he reported the chest pain to Winston more than once, but that Winston did not take action to assist him or call for medical attention (*id.* at 6). Plaintiff states that, because of Winston's conduct, he sat for "another 25 to 30 min[u]tes in the hot sun" and that his pain worsened (*id.* at 7). Other persons then helped Plaintiff to a room with a fan, where Plaintiff waited an additional fifteen minutes for medical staff to arrive (*id.* at 7-8). The unit's medical staff sent Plaintiff to Angleton Hospital, where doctors told him that he had suffered a heart attack (*id.* at 8-9). Plaintiff then was transported to John Sealy Hospital and remained hospitalized for five days (*id.* at 9).

(Dkt. 52, at 1-2).[1] Based on these allegations, the Court denied Winston's motion for judgment on the pleadings and set a deadline for him to file a summary-judgment motion:

> Plaintiff has pleaded that he reported his "severe" chest pain to Winston more than once, and that Winston nevertheless required him to wait in the sun while his pain worsened. He also has pleaded that medical attention was delayed by approximately 45 minutes, and that he suffered a heart attack requiring emergency medical care and a five-day hospitalization. These allegations are sufficient at the pleading stage.
>
> Winston's motion for judgment on the pleadings therefore will be denied. Winston may reurge his arguments in a motion for summary judgment, which will allow reference to matters outside the pleadings.

(Dkt. 52, at 5-6) (citation omitted).

Defendant now has filed his summary-judgment motion (Dkt. 55), accompanied by an affidavit from Winston recounting the events of June 15, 2016. Winston states that he

---

[1] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

worked at the Darrington Unit trusty camp along with three "dorm officers" and one "utility officer" (Dkt. 55-1, at 2). He avers that, when he "received a call from a dorm officer that Offender Saville wanted medical attention," he "advised that the dorm officer should have Saville come to the turn-out shed" (*id.*). Saville claims that Winston gave these instructions at approximately 11:20 a.m., by which time 20 minutes had elapsed since he first reported his chest pain to the dorm officer (Dkt. 57, at 1-2).

Winston's affidavit states that, after speaking with Saville in the shed, he called for medical help:

> I asked Saville what was wrong. He said that he had chest pains. I responded that I would call medical. I called medical and told them of Offender Saville's complaints. I was asked specific questions about Saville's appearance. I observed that he did not appear to be in distress—that he was able to stand, that he was not sweating and that he was speaking in a normal voice. He was, in fact, cursing and ranting that he did not want to ride the trailer. I reported these facts to the person I spoke with in the medical department, who advised me to get Offender Saville to the back gate.

(Dkt. 55-1, at 2-3). In his sworn declaration, Saville agrees that he was "calm" and "coherent" and spoke "in a normal voice" when he told Winston about his chest pains (Dkt. 57, at 5).

Saville alleges that, rather than transporting him immediately for medical help, Winston delayed his access to medical care when he "chose to make [Saville] ride on the trailer, in the hot sun, with the other offenders that were going to the back gate" (*id.*). He claims that, that after he got on the trailer as Winston instructed, he "sat on the trailer in

the hot sun for another 20 minutes until the trailer was filled up" (*id*. at 2).[2] Winston agrees that the trailer was delayed by approximately 20 minutes and, although he does not explain the reason, states that he did not cause the delay:

> I advised Saville to get on the trailer. He was agitated by this and said that he would not get on the trailer. There was a delay in transporting offenders to the back gate, which was not due to any action on my part. At some point he got on the trailer and was transported to the main building. From the time I first saw Offender Saville until the trailer left the turn-out shed was a period of approximately twenty (20) minutes.

(Dkt. 55-1, at 3). He avers that he was "unaware of Offender Saville's medical history, including any alleged heart-related condition" (*id.*).

Winston maintains that the trailer was the only way to transport Saville to the medical department. *See id.* ("[t]here was a tractor-trailer at the turn-out shed, which was the only means of transporting offenders to the main building where Saville would have access to the medical department"). However, Saville avers that a state vehicle was available at the trusty camp for Winston's use and that TDCJ policy required Winston to use the vehicle for a medical emergency (Dkt. 57, at 5). He also alleges that, when he arrived at the back gate, an officer there told him that Winston "was suppose[d] to bring you directly to medical instead of making you ride that trailer" (*id*. at 2).

Saville estimates that he arrived at the back gate at 11:40 a.m. (*id.*). Winston has submitted Saville's medical records from the clinic, which show that medical personnel were notified by security staff at 11:30 a.m. that Saville needed medical attention; that

---

[2] In other filings, Plaintiff estimates that he sat on the trailer for 25-30 minutes (Dkt. 30, at 7).

medical staff "arrived" at 11:35 a.m., presumably at the back gate to wait for the trailer bringing Saville; and that Saville's "arrival" at an unspecified location, presumably the back gate or the clinic, was at "11:45 11:50" (Dkt. 55-2, at 4).

TDCJ's clinic records reflect that Saville arrived by stretcher in stable condition and complained of chest pain radiating to his left arm (*id.*). He described the chest pain as sharp, constant, and radiating, and ranked its severity as 8 out of 10 (*id.*). The nursing assessment noted normal respirations and normal arm strength on both sides (*id.* at 5). At 12:00 noon, Saville was given aspirin to chew and "nitro x1" and reported that his chest pain "remain[ed] at a 7/10 after 1st nitro" (*id.* at 6). An EKG showed normal sinus rhythm (*id.*). At 12:05 p.m. Saville received a second "nitro" and reported chest pain of 5 out of 10 (*id.*). At 12:10 p.m. Saville received a "3rd nitro" and stated that his chest pain remained the same after the third dose (*id.*). Clinic staff notified a physician, Dr. Owusu, who ordered that Saville go to an emergency room for evaluation of chest pain "unrelieved by nitro x3" (*id.*). At 1:15 p.m., Saville departed by ambulance (*id.*). He states that doctors at Angleton Hospital told him that he had suffered a heart attack and transferred him to John Sealy Hospital in Galveston, where he was hospitalized for five days (Dkt. 57, at 3). Winston has not submitted, and the Court's current record does not contain, Saville's medical records from either hospital.

Plaintiff claims that Winston violated his Eighth Amendment right to adequate medical care. He alleges that his heart attack might have been prevented if he had received prompt medical attention. *See* Dkt. 32, at 6 (alleging that by the time he arrived at the back

gate, he "was in severe pain" and "[his] condition had worsened to where [he] was needing help to move"); Dkt. 57, at 5 (stating in sworn declaration that he "suffer[ed] a heart attack, which could have been prevented had Serg[e]ant Winston taken me directly to the infirmary instead of making me ride on the trailer").

Winston maintains that, according to TDCJ policy, he did not have the responsibility to call 911 for a medical emergency, but only to report Saville's medical needs to the medical department:

> Per TDCJ policy, medical is tasked with the responsibility of calling 911, if needed. My understanding of the policy is that I was to report Offender Saville's concerns/condition to medical and that medical would address his medical needs. I did not do anything to hinder Offender Saville getting medical treatment.

(Dkt. 55-1, at 3). He submits AD-06.07, a TDCJ administrative directive covering inmates' access to health services (Dkt. 55-3). The procedures dictate that "[s]ecurity staff shall facilitate access to health services" and "shall not block of hinder access to health services" (*id.* at 2). They also provide guidelines for handling urgent medical complaints:

> IV.    All urgent requests and complaints shall be address by health care professionals immediately.
>
>     A.    Each unit shall post procedures for contacting health care personnel 24 hours per day.
>
>     B.    Offenders with conditions such as . . . . chest pains . . . shall be afforded immediate access to health services.
>
>     C.    Institutional operations such as count, feeding, work schedules, or similar routine operations, may not be used as reason to delay access to health services staff for urgent or emergency complaints.

> V. The judgment of health care professionals regarding health-related conditions has priority over routine unit operations.

(*id.* at 3).

Saville also brings claims against Warden Baker, on whom the Court has not authorized service (Dkt. 37, at 2). Saville alleges that, while he was in the TDCJ clinic, Warden Baker came to speak with him:

> Warden Eddie Baker came to the infirmary to talk to Saville, and Saville told him about how [S]ergeant Winston treated him at the trusty camp and how he made Saville ride on the trailer to the back gate, instead of taking him directly to medical. Warden Baker told a m[a]jor and [lieutenant] who [were] present to go to the trusty camp and find out why Saville was made to ride the trailer instead of being taken directly to the infirmary in a state vehicle of the trusty camp.

(Dkt. 57, at 2). In his supplemental complaint, Saville also alleges that, although Baker sent a major and a lieutenant to speak with Winston about the incident, he "did not act real concerned" and did not discipline Winston (Dkt. 30, at 9).

Saville sues both Winston and Baker in their official and individual capacities. He seeks declaratory judgment in his favor as well as nominal, compensatory, and punitive damages (Dkt. 30, at 21-22).

## II. STANDARD OF REVIEW

### A. Review of *Pro Se* Pleadings

Because the plaintiff is an inmate bringing suit about prison conditions, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks

> V. The judgment of health care professionals regarding health-related conditions has priority over routine unit operations.

(*id.* at 3).

Saville also brings claims against Warden Baker, on whom the Court has not authorized service (Dkt. 37, at 2). Saville alleges that, while he was in the TDCJ clinic, Warden Baker came to speak with him:

> Warden Eddie Baker came to the infirmary to talk to Saville, and Saville told him about how [S]ergeant Winston treated him at the trusty camp and how he made Saville ride on the trailer to the back gate, instead of taking him directly to medical. Warden Baker told a m[a]jor and [lieutenant] who [were] present to go to the trusty camp and find out why Saville was made to ride the trailer instead of being taken directly to the infirmary in a state vehicle of the trusty camp.

(Dkt. 57, at 2). In his supplemental complaint, Saville also alleges that, although Baker sent a major and a lieutenant to speak with Winston about the incident, he "did not act real concerned" and did not discipline Winston (Dkt. 30, at 9).

Saville sues both Winston and Baker in their official and individual capacities. He seeks declaratory judgment in his favor as well as nominal, compensatory, and punitive damages (Dkt. 30, at 21-22).

## II. STANDARD OF REVIEW

### A. Review of *Pro Se* Pleadings

Because the plaintiff is an inmate bringing suit about prison conditions, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks

monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b); 28 U.S.C. § 1915(e)(2)(B); *see* 42 U.S.C. § 1997e(c)(1). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings and litigation history, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted). Regardless of how well-pleaded the factual allegations may be, they must demonstrate that the plaintiff is entitled to relief under a valid legal theory. *See Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *McCormick v. Stalder,* 105 F.3d 1059, 1061 (5th Cir. 1997).

### B. Summary Judgment—Rule 56

Defendant has moved for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*. The nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case." *Firman v. Life Ins. Co. of N. Am.*, 684 F.3d 533, 538 (5th Cir. 2012) (citation and internal quotation marks omitted).

In deciding a summary-judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cty.*, 678 F.3d 344, 348 (5th

Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary-judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary-judgment motion. *Martin v. Harrison Cty. Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary-judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe *pro se* filings liberally, we still require *pro se* parties to fundamentally abide by the rules that govern the federal courts. *Pro se* litigants must properly . . . present summary[-]judgment evidence") (internal citation and quotation marks omitted).

### III. DISCUSSION

#### A. Official Immunity

Defendants were TDCJ officials at all times relevant to Plaintiff's allegations. A claim against a state employee in his or her official capacity is a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008).

Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393–94 (5th Cir. 2015); *Moore v. La. Bd. Of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting § 1983. *NiGen*, 804 F.3d at 394.

Defendant's motion for summary judgment therefore is **granted in part**. Plaintiff's claims for money damages against Defendants in their official capacities will be dismissed for lack of jurisdiction because the State is immune under the Eleventh Amendment.

### B. Qualified Immunity

Defendant Winston has invoked qualified immunity. Plaintiff bears the burden to negate the defense. *See Hanks v. Rogers*, 853 F.3d 738, 744 (5th Cir. 2017); *King v. Handorf*, 821 F.3d 650, 653 (5th Cir. 2016). Determination of qualified immunity requires a bifurcated analysis: first, the court must decide "whether the undisputed facts and the disputed facts, accepting the plaintiffs' version of the disputed facts as true, constitute a violation of a constitutional right"; and second, the court must determine "whether the defendant's conduct was objectively reasonable in light of clearly established law." *Carroll v. Ellington*, 800 F.3d 154, 169 (5th Cir. 2015) (internal quotation marks and citation omitted); *see Hanks*, 853 F.3d at 744; *Thompson v. Mercer*, 762 F.3d 433, 437 (5th Cir. 2014). Qualified immunity protects "all but the plainly incompetent or those who

knowingly violate the law." *Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 181 (5th Cir. 2016) (internal citation and quotation marks omitted). "If officers of reasonable competence could disagree as to whether the plaintiff's rights were violated, the officer's qualified immunity remains intact." *Hanks*, 853 F.3d at 744 (internal citations and quotation marks omitted).

A defendant's good-faith assertion of qualified immunity "alters the usual summary[-]judgment burden of proof, shifting it to the plaintiff to show that the defense is not available." *King*, 821 F.3d at 653 (internal citation and quotation marks omitted).

> The plaintiff must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law and that genuine issues of material fact exist regarding the reasonableness of the official's conduct. To negate a defense of qualified immunity and avoid summary judgment, the plaintiff need not present absolute proof, but must offer more than mere allegations.

*Id.* at 654 (internal citation and quotation marks omitted).

A reviewing court may address the prongs of the qualified-immunity analysis in any sequence, depending on the circumstances of the particular case at hand. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009); *Heaney v. Roberts*, 846 F.3d 795, 801 (5th Cir. 2017). Winston argues that summary judgment is appropriate on qualified-immunity grounds because Saville has not demonstrated a genuine issue of material fact under Eighth Amendment standards. The Court therefore proceeds to analyze the merits of Saville's claim.

### C.     Eighth Amendment

Saville alleges that Winston delayed his access to medical care when Saville

12/18

reported severe chest pain. He brings his claim under 42 U.S.C. § 1983, which provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt*, 822 F.3d at 180; *Townsend v. Moya*, 291 F.3d 859, 861 (5th Cir. 2002). Because the plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

To prevail on his Eighth Amendment claim, a plaintiff must demonstrate that the defendant exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment standard has both an objective and subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Cleveland v. Bell*, 938 F.3d 672, 676 (5th Cir. 2019); *Gobert v. Caldwell*, 463 F.3d 339, 345-46 (5th Cir. 2006). A plaintiff must show that the defendant was aware of facts from which the inference could be drawn of a substantial risk of serious harm; that the defendant subjectively drew the inference that the risk existed; and that the defendant disregarded the risk. *Cleveland*, 938 F.3d at 676. Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an

allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). A significant risk that the official "should have perceived but did not" is insufficient for a constitutional violation. *Cleveland*, 938 F.3d at 676. A delay in medical care can constitute a constitutional violation "only if there has been deliberate indifference that results in substantial harm." *Easter*, 467 F.3d at 463 (internal citation and quotation marks omitted).

Plaintiff claims that Winston was deliberately indifferent because his severe chest pain was a serious medical need and, although he informed Winston of the pain several times, Winston delayed the call for medical assistance (Dkt. 30, at 12-14; Dkt. 57, at 5). Plaintiff has presented evidence that the severe chest pain was a symptom of a heart attack, and claims that the heart attack could have been prevented if he had received immediate medical attention (Dkt. 57, at 5).

Winston argues that "there is no evidence that Winston both knew of and disregarded an excessive risk that Saville would have a heart attack" (Dkt. 55, at 10). He states that he was unaware that Saville had a heart condition that made him "susceptible to a heart attack" (*id.*). He points out that he called for medical attention, even though Saville did not appear to be in medical distress, and claims that he complied with AD-06.07's directive not to "block or hinder" Saville's access to health services (*id.* at 11).

At this stage of the proceedings, genuine issues of material fact remain on the essential elements of Saville's case. *See Cleveland*, 938 F.3d at 676. Regarding the first element, the parties dispute whether Winston was aware of facts from which he could have

inferred that Saville faced a substantial risk of serious harm. Saville claims that he told Winston multiple times that he was experiencing severe chest pain, and Winston does not contest this point, although he maintains that Saville was in no apparent distress. Although Winston states that he was unaware of Saville's medical history, such lack of awareness would not foreclose a finding that Winston disregarded a substantial risk of serious harm based on a new, urgent medical complaint. The parties also dispute whether Winston actually drew an inference of the risk to Saville. As for deliberate indifference, Winston does not directly address Saville's allegation that a state vehicle was available nearby and should have been used to transport him immediately. Although Winston presents evidence that he called medical personnel in response to Saville's complaints, and thus did not deny him medical attention, he does not squarely address Saville's allegation that Winston was responsible for the delay in medical treatment and that immediate medical treatment could have prevented the heart attack.

Both parties' summary-judgment motions therefore will be **denied** as to Saville's Eighth Amendment claim regarding delayed medical care. Winston's summary-judgment motion also is **denied** as to qualified-immunity protection. At this stage of the litigation, the record contains genuine issues of material fact as to whether Winston's conduct violated the Eighth Amendment and whether his conduct was reasonable. *See King*, 821 F.3d at 654.

### D. Warden Baker

The Court previously withheld service of process on Warden Baker, and now

examines whether Saville's claims against Baker are appropriately dismissed for failure to state a claim upon which relief can be granted. *See* 28 U.S.C. § 1915(e)(2)(B) ("the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted"); 42 U.S.C. § 1997e(c)(1) (authorizing dismissal of frivolous claims on the court's own motion). Saville's allegations against Baker are that he did not seem "real concerned" when speaking with Saville at the clinic, that he sent two officers to find out why Saville was not immediately transported for medical attention in the state vehicle, and that he failed to discipline Winston (Dkt. 30, at 9; Dkt. 57, at 2).

A supervisory official may be held liable under § 1983 "only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011) (internal quotation marks and citations omitted). *See Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 (5th Cir. 2006) ("[t]here is no vicarious or *respondeat superior* liability of supervisors under section 1983"). A plaintiff seeking to establish "supervisor liability for constitutional violations committed by subordinate employees . . . must show that the supervisor acted, or failed to act, with *deliberate indifference* to violations of others' constitutional rights committed by their subordinates." *Porter*, 659 F.3d at 446 (internal quotation marks, alterations, and citation omitted) (emphasis original). A failure-to-supervise or failure-to-train claim also requires a showing of deliberate indifference by the supervisor. *See Westfall v. Luna*, 903 F.3d 534, 552 (5th Cir. 2018); *Porter*, 659 F.3d at 446.

In this case, Saville does not allege that Baker was personally involved in the alleged violation of his Eighth Amendment rights, *i.e.*, the delay in medical treatment. He also fails to allege facts that could support a finding of deliberate indifference on Baker's part. His allegations that Baker seemed unconcerned, sent subordinate officers to look into the situation, and failed to discipline Winston are insufficient to state a non-frivolous claim for relief under the Eighth Amendment. *See Porter*, 659 F.3d at 446.[3]

Plaintiff's claims against Warden Baker will be **dismissed** with prejudice.

### E. Appointment of Counsel

Saville previously filed several motions for appointed counsel, which the Court denied without prejudice because, at the time, counsel was unnecessary (Dkt. 26). The Court now finds that the interests of justice dictate that Saville have assistance of counsel to proceed to trial. This case will be stayed and administratively closed while the Court locates *pro bono* counsel.

## IV. CONCLUSION

For the reasons stated above the Court **ORDERS** that:

1. Winston's motion for summary judgment (Dkt. 55) is **GRANTED in part** and **DENIED in part.** Summary judgment is **GRANTED** as to Saville's claims for money damages against Defendants in their official capacities, and these claims are **DISMISSED**

---

[3] Additionally, to the extent Saville brings a claim in this lawsuit that Baker violated Texas Penal Code § 39.04, the claim must be dismissed because the criminal statute he cites does not create a private right of action. *See Brown v. de la Cruz*, 156 S.W.3d 560, 567 & n.39 (Tex. 2004); *Van Duzer v. U.S. Bank Nat'l Ass'n*, 995 F. Supp. 2d 673, 699 (S.D. Tex. 2014).

**with prejudice** for lack of jurisdiction.  Summary judgment is **DENIED** as to Saville's Eighth Amendment claim against Winston for delayed medical attention.

    2.    Plaintiff's motion for summary judgment (Dkt. 57) is **DENIED** because, on the current record, genuine issues of material fact preclude judgment as a matter of law in Plaintiff's favor.

    3.    Saville's claims against Warden Baker are **DISMISSED with prejudice** under 28 U.S.C. § 1915(e)(2)(B).

    4.    Saville may proceed to trial on his Eighth Amendment claim against Sergeant Winston.  This case is **STAYED** and **ADMINISTRATIVELY CLOSED** while the Court locates *pro bono* counsel to represent Saville at trial.  The Court will enter an order with scheduling details when the case is reinstated.

    SIGNED at Galveston, Texas, on October 23rd, 2019.

_____
JEFFREY VINCENT BROWN
UNITED STATES DISTRICT JUDGE